In the Matter of the Attorney-General *v.* The Continental Life Insurance Company.

Allowances to compensate special counsel employed by the attorney-general to act for him in proceedings to wind up the affairs of an insolvent life insurance company, to be paid out of the funds in the hands of the receiver, are not authorized.

*It seems* that the attorney-general has no authority to appoint special counsel to act generally for him in the conduct of suits or proceedings in which the State is interested; and no authority exists to employ counsel to aid him, save where it is expressly given by statute.   (1 R. S. 165, § 15; chap. 357, Laws of 1848.)

(Argued March 14, 1882; decided April 11, 1882.)

Appeal from order of the General Term of the Supreme Court, in the third judicial department, made February 10, 1882, which affirmed an order of Special Term, the substance of which as well as the material facts are stated in the opinion.

*Raphael J. Moses, Jr.*, for Hartwell *et al.*, appellants. The attorney-general was not entitled to an allowance out of the fund for services of special counsel employed by him. (Laws 1880, chap. 537; Laws 1848, chap. 357, § 3; Laws 1879, chap. 272; Laws 1878, p. 342; 1 Edm. Stat. 164; § 15, title 1, chap. 8, part 1 R. S.; *Nevitt* v. *Bk. Pt. Gibson*, 6 S. & M. 541; *Hightower* v. *Thornton*, 6 Ga. 504; *Wood* v. *Drummond*, 3 Mass. 210; *Nummer* v. *Potomac Co.*, 8 Peters, 285; *Gunn* v. *Barry*, 15 Wall. 610; *Curran* v. *State of Arkansas*, 15 How. 308.)

*William Barnes* for divers creditors and policy-holders, appellants. It is against public policy and the best interests of the people of the State of New York that any lawyer should be appointed by the attorney-general to represent the State in any litigation, with the privilege of applying to the court for the payment of his services out of the fund. (Maryland Const., § 3, art. V; Worcester's Dictionary, 96; Wharton's Law Lexicon, 97.)

*Calvin Frost* and *Leslie W. Russell*, attorney-general, for respondent. The rules applicable to allowances to trustees and others of like character for payment of costs, expenses and counsel fees, apply to this case, and have not been abolished by the Code. (*Dowing* v. *Marshall*, 37 N. Y. 380.)

Andrews, Ch. J. This is an appeal from an order of the General Term affirming an order of the Special Term, made on the 24th day of December, 1881, granting to special counsel retained by the attorney-general, an allowance of $3,500 for his services and disbursements, to be paid by the receiver of the Continental Life Insurance Company, out of the fund in his hands as receiver. The Continental Life Insurance Com-

pany, was a corporation in this State, organized under chapter 463, Laws of 1853, and having become insolvent, in October, 1876, upon the application of the attorney-general, the corporation was dissolved, and a receiver appointed of its property. It appears by the petition for the allowance in question (which was duly verified) that in February, 1880, the petitioner was retained by the attorney-general, to appear for him in the action in which the receiver was appointed, "and in all proceedings therein and in relation thereto, with full authority to represent him and act for him therein, and receive all papers and pleadings in said proceedings." The petition sets forth in some detail, the services rendered by the petitioner. They include the examination of a great number of motion papers, arguments in court, attendance upon references, consultation with the counsel for the receiver and of the policy-holders. The application for the allowance was made on notice to the receiver, and to the counsel for the policy-holders. There was no evidence presented to the Special Term, of the value of the petitioner's services, except the statement of the petitioner in his petition. But neither the receiver nor the counsel for the policy-holders contested at the Special Term the value of the services, or objected that the amount claimed was excessive; and it was expressly admitted by one of the counsel for the appellants, on the argument in this court, that the allowance was reasonable. We have not been able to find any statutory authority conferred upon the attorney-general, to appoint special counsel to act generally for him in the conduct of suits or proceedings, in which the State is interested. The Revised Statutes (1 R. S. 165, § 15) authorize the governor, to employ counsel to assist the attorney-general, in any suit or proceeding prosecuted or defended by him, in behalf of the State. By chapter 357, Laws of 1848, the attorney-general, is authorized to employ additional counsel, in prosecuting or defending suits in which the people are a party, or are interested, "at any General or Special Term or at chambers," when official duties prevent his attending in person. This statute as will be observed, limits the authority conferred, to the appointment of counsel to appear at a term of

court, or at chambers, and then only when the attorney-general cannot be present in person. We find no other general statute conferring upon the attorney-general, authority to employ special counsel on behalf of the State. It seems to be quite plain that the statutes referred to, did not authorize the general retainer under which the petitioner in this case acted. The retainer was not confined to an appearance by the petitioner in court, or at chambers, nor was it made upon the special exigency contemplated by the statute. Independently of the statute there seems to be no authority vested in the attorney-general, to employ special counsel. In view of the statutes regulating the employment of counsel, such authority cannot be deemed to be vested in that officer, as incident to his office. Provision is made for the appointment of deputies to assist the attorney-general. This general provision, and the statutes authorizing the governor, or the attorney-general, in certain cases to appoint special counsel, seem plainly to exclude the inference, of an authority in the attorney-general, to appoint special counsel, outside of the statute. The services rendered by the petitioner were rendered in pursuance of a retainer by the attorney-general, much more comprehensive than was authorized, and there would be much difficulty in justifying the allowance in this case, on that ground alone.

But we need not determine this question, for we prefer to place our decision on the broader ground that allowances to the attorney-general, for services of special counsel employed by him to aid in the settlement and adjustment of the affairs of insolvent corporations, in the hands of receivers, to be paid out of the fund, are not authorized. The State under the general acts for the organization of life insurance companies, and similar corporations, has voluntarily assumed the relation of *quasi* trustee, or guardian of the interests of the policy-holders. It requires a deposit to be made in the insurance department, for their security, before a company is permitted to commence business. The companies are subject to the visitation, and supervision, of designated State officers. Very many provisions will be found in the statute,

designed for the protection of policy-holders against fraud and mismanagement. In case of insolvency, it is made the duty of the attorney-general, to take proceedings for the appointment of a receiver of the insolvent corporation, and the fund and property are sequestrated, and the court by its officers, assumes the management and distribution of the assets, in the interest of policy-holders and creditors. By chapter 537, Laws of 1880, a still further step was taken by the State, in the interest of those beneficially interested in the assets of insolvent corporations. By the fourth section of the act, all motion papers, and every proposed order, or judgment, for an allowance in any action in which a receiver of an insolvent corporation shall have been appointed, are required to be served on the attorney-general, and the section provides, that "no order or judgment granted, shall. vary in any material respect from the relief specified in such copy order, or judgment, unless the attorney-general shall appear on the return day, and have been heard in relation thereto." It cannot be doubted that this section is specially pointed at the abuses which have grown up, in the administration by receivers, of the assets of insolvent corporations. The statute, by requiring the service of papers relating to applications for allowances, to be served on the attorney-general, by necessary intendment, imposes upon him the duty of resisting all efforts to deplete the fund, by extravagant allowances, or improper charges. In the performance of this duty, the attorney-general represents the State. The duty imposed upon him by this statute, is a most responsible one, and if faithfully performed, no greater service can be rendered to the administration of justice, by that high officer. It was not we think contemplated when the act of 1880 was passed that the State should be indemnified out of the assets of an insolvent corporation, for the services or expenses of its officers, or agents, rendered in carrying out the provisions of the act. The general policy of the State, is to compensate its officers, by fixed salaries, and when special counsel are authorized to be employed to assist the attorney-general, the statute conferring the authority also provides the manner of ascertaining

the compensation, and the mode of payment. The section of the Revised Statutes authorizing the governor, to employ counsel (1 R. S. 164, § 15), also provides that the reasonable compensation of such counsel, to be certified by the governor, shall be paid out of the treasury. The statute of 1848, chapter 537, contains a similar provision for the compensation of counsel employed by the attorney-general under that act.

It is inconsistent with the duty imposed by the act of 1880, that the attorney-general should be placed in the attitude of applying to the court for allowances to his own assistants. The State intervenes, as *parens patriæ*, for the protection of the. fund, and those beneficially interested, and it is not consistent with its dignity, nor was it, we think, contemplated, that the value of the services of its agents in the execution of this voluntary trust, should be a charge upon the assets of the insolvent corporation. We are not insensible to the consideration that the act of 1880, imposes onerous duties upon the attorney-general, and that adequate assistance may not have been provided to enable him to perform this additional labor. It would be greatly to be regretted if this decision should hamper the action of the attorney-general under this salutary statute. The legislature, however, can afford such relief as may be necessary. But to permit the State to participate in the division of the assets of insolvent corporations in the hands of a receiver, under a claim for discretionary allowances, or to charge the fund for services of special counsel of the State, is, we think, contrary to principle and to the policy of our legislation.

The order should be reversed and petition denied, but without costs.

All concur, except RAPALLO, J., absent.

Ordered accordingly.